IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1998 SESSION



**FILED**

**January 29, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | |
|---|---|
| STATE OF TENNESSEE, )<br>)<br>Appellee, )<br>)<br>v. )<br>)<br>RICKY WOODARD, )<br>)<br>Appellant. ) | C.C.A. No. 01C01-9802-CC-00056<br><br>Williamson County<br><br>Honorable Donald P. Harris, Judge<br><br>(Aggravated Burglary, Theft Under $500) |

FOR THE APPELLANT:

Larry D. Drolsum
Assistant Public Defender
407 C Main Street
P. O. Box 68
Franklin, TN 37065-0068

OF COUNSEL:
John H. Henderson
District Public Defender
407-C Main Street
P. O. Box 68
Franklin, TN 37065-0068

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Timothy Behan
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

Joseph D. Baugh, Jr.
District Attorney General
Williamson County Courthouse
P. O. Box 937
Franklin, TN 37065-0937

Jeffrey P. Burks
Assistant District Attorney General
Williamson County Courthouse
P. O. Box 937
Franklin, TN 37065-0937

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

## OPINION

The appellant, Ricky Woodard, herein referred as "the defendant," appeals as of right from the verdicts of a Williamson County jury finding him guilty of aggravated burglary and theft of property under $500. At the conclusion of a sentencing hearing, the trial court sentenced the defendant as a Range III persistent offender to fourteen years for the aggravated burglary offense and to eleven months, twenty-nine days for the theft charge. The sentences were ordered to run concurrently, and the trial court waived jury fines of $5,000 and $1,500.

After an appropriate review of the entire case, briefs of the parties, and applicable law, we affirm the trial court's judgment.

The defendant presents four issues for appellate review:

1. Whether the trial court erred in permitting the in-court and out-of-court identification of the defendant through the testimony of Sarah Welborn.

2. Whether the state sufficiently proved the identification of the defendant through circumstantial evidence.

3. Whether the trial court erred in denying a motion for a judgment of acquittal due to insufficient evidence as a matter of law to convict the defendant of aggravated burglary.

4. Whether the trial court erred in misapplying enhancement factors and failing to follow sentencing guidelines.

## FACTUAL BACKGROUND

On October 24, 1996, the home of Jerry and Sarah Welborn was burglarized and certain personal property was taken. The defendant was a painter and had worked on both the exterior and interior of the victims' home prior to the offense. This work, however, was completed in early October, at least "a couple of weeks" prior to the burglary of October 24. On October 24, Mrs. Welborn came home at approximately 3:30 p.m. When she started up her driveway, she met the defendant, who was coming out of her driveway

in a truck. Mrs. Welborn backed her vehicle out to let the defendant pass and then continued on to her house. Once inside, Mrs. Welborn discovered that her belongings were in disarray, as though someone had rummaged through them. Mrs. Welborn observed that drawers in an upstairs bedroom had been pulled out and their contents strewn about the floor. Her VCR was missing. Mrs. Welborn called the police. Sometime later, Mrs. Welborn found that some checks from her and her husband's checking account were missing.

Two employees of NationsBank, Jennifer Martinez and Jamie Spears, testified that the defendant cashed five checks from the Welborn bank account on various dates between October 25, 1996 and October 28, 1996. The checks ranged in amounts from $85.00 to $212.00. Also, the witnesses provided bank photographs which clearly depicted the defendant cashing the checks on the dates in question.

The defendant elected not to present any proof.

## APPELLATE ISSUES

### Part A

### Identification of the Defendant

The defendant argues that the testimony of Sarah Welborn regarding her identification of him was confusing, and that the trial court's allowance of her testimony rises to the level of plain error. The state disagrees.

From our review of the record, the defendant did not object to Mrs. Welborn's testimony at trial, nor did he raise this issue in his motion for a new trial. Thus, we agree with the state that this issue is waived. Tenn. R. App. P. 3(e); *State v. Caughron,* 855 S.W.2d 526, 538 (Tenn. 1993), *cert. denied,* 510 U.S. 979, 114 S.Ct. 475, 126 L.Ed. 426 (1993).

The record establishes that the defendant challenged the testimony of Mrs. Welborn's identification, both in and out of court. Mrs. Welborn admitted some of her testimony was "blurry" due, in part, to some recent "shock treatments" for a mental disorder. Although the witness identified the defendant as leaving her property in a red Isuzu truck, the defendant drove a red Chevrolet truck. Further, Mrs. Welborn did not advise Deputy Sheriff Quinton Bell that the person driving the red truck was one of the painters who had just painted her home. However, Mrs. Welborn did give a description of the truck's driver. At the preliminary hearing and at trial, Mrs. Welborn was positive the defendant was the man she saw in her driveway driving a red truck.

The trial court gave the mandatory identity jury instruction. Thus, the jury could consider the discrepancies in Mrs. Welborn's testimony. *State v. Dyle,* 899 S.W.2d 607, 612 (Tenn. 1995).

In determining plain error, this Court must consider the following factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *State v. Adkisson,* 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994); Tenn. R. Crim. P. 52(b). In applying these factors to this record, we cannot find that a substantial right of the defendant has been adversely affected by the testimony of Mrs. Welborn's identification. The jury had the full opportunity to determine the credibility and value of Mrs. Welborn's testimony surrounding her ability to adequately identify the defendant. There is no merit to this issue.

4

**Parts B and C**

**Sufficiency of Evidence and**

**Denial of Motion for Judgment of Acquittal**

The defendant argues that the evidence established that, if the defendant was guilty of any offense, it was theft and not aggravated burglary; thus, he was entitled to a motion for judgment of acquittal. The state disagrees.

When reviewing a trial court's judgment, this Court will not disturb a verdict of guilty unless the facts in the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13 (e); *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982); *State v. Brewer,* 932 S.W.2d 1, 19 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1996). Initially, a defendant is cloaked with the presumption of innocence. *Tuggle,* 639 S.W.2d at 914. However, a jury conviction removes the presumption of innocence and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *Id.*

In determining the sufficiency of evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978); *see also State v. Blanton,* 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994). This rule is applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990).

A criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn. 1973), *cert. denied, Robinson v. Tennessee*, 419 U.S. 877, 95 S.Ct. 141, 42 L.Ed.2d 117 (1974). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. . . ." *State v. Crawford,* 470 S.W.2d 610, 612 (Tenn. 1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which the facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id.* at 613; *State v. Matthews,* 805 S.W.2d 776, 780 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990). A clear analysis of the evidence in this record reveals the state's proof as to aggravated burglary is wholly circumstantial.

The evidence shows that the home of the Welborns was burglarized and ransacked. Checks and a VCR were stolen on October 24, 1996, and the defendant was identified leaving the premises. There is a reasonable inference that had the VCR been missing prior to October 24, it would have been apparent to the Welborns. Within twenty-four hours of the burglary, the defendant was identified cashing one of the stolen checks. The defendant then continued cashing additional checks over a three-day time span. The endorsements of the checks established that the defendant cashed them in Nashville, where he was arrested while fleeing from law enforcement officers. The Welborns lived and banked in Cottage Grove, Tennessee. Although the defendant might have had privileged access to the Welborn home earlier, he did not have such legal access on October 24, 1996. The evidence in this record is sufficient to establish the burglary element of non-consensual entry into a habitation. There is no merit to these issues.

**Part D**

**Sentencing**

The defendant contends the trial court erred in finding and applying the enhancement factor that the defendant abused a position of private trust in order to increase his sentence. The defendant concedes the trial court was correct in finding enhancement factors (1) and (13), namely, that the defendant had a previous history of criminal convictions and that this felony was committed while the defendant was on parole. Tenn. Code Ann. § 40-35-114. The state argues the sentence was appropriate.

When a defendant complains of the imposition of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). Therefore, the burden of showing that the sentence is improper is upon the appealing party. *Id.* The presumption that determinations made by the trial court are correct is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991); *State v. Smith,* 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994), *per. app. denied* (Tenn. 1995).

If appellate review reflects that the trial court properly considered all relevant facts and its findings of fact are adequately supported by the record, this Court must affirm the sentence "even if we would have preferred a different result." *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In arriving at the proper determination of an appropriate sentence, the trial court must consider: (1) the evidence, if any, received at the trial or guilty plea and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about the sentencing; and (7) the potential for rehabilitation and treatment. Tenn. Code Ann. §§ 40-35-210(a) and (b) (1997); Tenn.

Code Ann. § 40-35-103(5) (1990); *State v. Holland,* 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the case before us, the trial court correctly applied the sentencing principles; thus, the presumption of correctness applies. The trial court found three enhancement factors and one mitigating factor. At the sentencing hearing, the presentence report was introduced, which established the defendant had seven felony convictions between 1982 and 1993, including forgery, grand larceny, attempt to commit a felony, burglary third degree, and two felony escapes. The defendant had been sentenced as a persistent offender for the offenses of forgery and burglary third degree. The presentence report reveals the defendant has been on parole a number of times, and, in each instance, parole was revoked. At the time of the burglary of the Welborn home, the defendant was on parole. Clearly, the record supports the trial court's finding that the defendant has a significant history of criminal convictions and was on parole at the time of the Welborn burglary.

A trial court may find that an abuse of a private or public trust is grounds to consider in the enhancement of a sentence. Tennessee Code Annotated § 40-35-114(15) reads as follows: "The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense." It is the defendant's contention that he had no relationship with the Welborns. The defendant was an employee of United Construction Company and had worked at the Welborns' only through employment. The Welborns did not personally know the defendant nor did they place any personal trust in the defendant. In determining if the abuse of a private trust is applicable, the defendant would have to: (1) occupy a position of trust, and (2) abuse that position in a manner that significantly facilitated the commission of the offense. *State v. Kissinger,* 922 S.W.2d 482, 488 (Tenn. 1996). In *Kissinger,* the Supreme Court stated:

> The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the **nature of the relationship.** Thus, the court should

8

> look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith (emphasis added).

*Id.* at 488.

In appropriate cases, employees who commit crimes upon third parties in the course of their employment may very well abuse a private trust. Homeowners have a reasonable expectation of security of their premises and personal property when they hire contractors to work on their homes. We believe that the defendant, by working in the Welborns' home, had a duty not to abuse their trust. Under the facts in this record, it is more difficult to determine how the defendant utilized that trust to facilitate the commission of these offenses. *Kissinger,* 922 S.W.2d at 488. It can be logically inferred that the defendant, while working in the interior of the Welborns' home, had ample opportunity to observe the location of items of value. However, the defendant ceased working in the Welborn home two to three weeks prior to the burglary. This fact is essential to the sufficiency issues on the element of non-consensual entry into the home. Assuming the defendant had prior knowledge of the dwelling's interior, did this knowledge amount to a "significant" facilitation of this offense? Under the facts in this record, we believe that the defendant's prior access to the premises does not appear to be a "significant" benefit. Our research indicates that this enhancement factor has been most utilized in sexual abuse cases involving minor children and in circumstances of an employee stealing directly from his employer. *Kissinger,* 922 S.W.2d at 488*; State v. Grissom,* 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997).

Under these facts, we conclude the trial court erred in applying enhancement factor (15), abuse of private trust. Tenn. Code Ann. § 40-35-114. However, the application of this enhancement factor is harmless error. The proof is overwhelming that the defendant has a substantial history of criminal convictions and violations of parole. This defendant falls well within the sentencing purposes of the Criminal Sentencing Reform Act of 1989: restraining defendants with a lengthy history of criminal conduct, Tenn. Code Ann. § 40-35-102(3)(B), and confinement is necessary to protect society by restraining a defendant who

has a long history of criminal conduct, Tenn. Code Ann. § 40-35-103(1)(A). The trial court was well justified in sentencing the defendant to fourteen years as a Range III, persistent offender.

The trial court's judgment is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:


_____(Not Participating)_____
PAUL G. SUMMERS, JUDGE


_____
JOE G. RILEY, JUDGE

10